[No. 15173.   Department Two. — December 11, 1893.]

## RACHEL J. SNYDER, Appellant, v. FRED L. CLARK, Administrator, Respondent.

Execution Sale—Sheriff's Return—Payment of Judgment—Contract of Purchaser With Surety—Estoppel.—The return of a sheriff respecting a sale of the real estate of a principal debtor under two executions, stating that the purchaser had paid the amount of both judgments, and that they were wholly satisfied out of the proceeds of the sale, is not conclusive, and does not estop the purchaser from proving that the sheriff received no purchase money in fact, and that one of the judgments was paid and satisfied in pursuance of a contract with one of the judgment debtors who was cosurety with another judgment debtor, the father of the purchaser, in whose interest the contract was made, providing that the cosurety should reimburse the purchaser for one-half of the judgment if all were paid by the purchaser, and that the contract contemplated the right to bid at the sale.

Id.—Action Upon Contract—Evidence—Condition of Land.—In an action upon the contract to recover the money agreed to be contributed in reimbursement of one-half the amount of the judgment paid, evidence is admissible to prove that the land bid in by the purchaser at the sheriff's sale was mortgaged to the extent of six thousand dollars, and that a homestead had been declared upon it by the principal debtor before the levy of the execution upon it, as tending to show that the bid at the sale in satisfaction of the judgment was contemplated by the contract, and was not a breach of the contract to pay the judgment.

Appeal from a judgment of the Superior Court of Sonoma County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Lippitt & Lippitt*, for Appellant.

*Wm. E. McConnell*, for Respondent.

McFarland, J.—The defendant is administrator of O. W. Craig, deceased. Craig, in his lifetime, and Franklin Sears as sureties, had with G. C. P. Sears as principal made two promissory notes to one Wickersham for something over $4,000; and on December 9, 1889, Wickersham had recovered judgment on said notes against all three of said persons for $4,280.40 and costs. The plaintiff herein and said Franklin Sears had

also, as sureties, made another note with said G. C. P. Sears as principal to said Wickersham for a large amount, upon which Wickersham at the same time had recovered a judgment for $21,582.60 and costs.   Wickersham took out executions on said judgments, upon which personal property of G. C. P. Sears was levied upon and sold for something over $16,000.   This money was applied *pro rata* upon the two judgments—leaving unsatisfied upon the judgment against Craig and the two Sears the sum of $2,010, and upon the judgment against the plaintiff, Mrs. Snyder, and the two Sears, $10,053.   There is no issue in the case as to the propriety and legality of said *pro rata* application to said judgments.

The said Franklin Sears was the father of the plaintiff, Mrs. Snyder, and it is averred in the complaint (substantially) that she proposed to Craig that she would pay her father's half of said balance of $2,010, for which she was not liable, if he, Craig, would pay the other half; that Craig assented to the proposition, but said that he would not have any ready money for a short time, and agreed and promised that if she would also pay his half and satisfy the judgment, he would pay to her his half, to wit: $1,005; that in pursuance of his agreement and promise she paid the whole of said amount, and thereby satisfied said judgment; that afterwards Craig refused to pay her any part of said $1,005, and that his administrator, after due presentation of her claim, also refuses to pay any part thereof.   The action is to recover said $1,005.   The court below found that such contract had been made by and between said Craig and plaintiff; but found, also, that plaintiff had not paid and satisfied said balance of judgment of $2,010, and thereupon gave judgment for defendant.   Plaintiff appeals from the judgment, and from an order denying a new trial.   The only question involved is whether or not appellant paid and satisfied said judgment.

At the time of the levy of the execution upon the personal property of said G. C. P. Sears there was also a levy made upon certain real property belonging to him;

and this real property was sold by the sheriff on June 30, 1890, which was after the said contract between Craig and plaintiff. Plaintiff purchased this real property at said sale, and bid for it the whole amount of both of said judgments. The sheriff returned the executions as wholly satisfied, and got from the attorney of Wickersham a receipt for the money bid by plaintiff. Plaintiff gave to Wickersham her note for the full amount of her bid and of the two judgments, which note she afterwards paid in full. Under these circumstances, the court found that appellant had not satisfied said judgment against Craig and Sears; but that it was satisfied out of the proceeds of said sale of the real property of G. C. P. Sears to appellant under said executions.

It is strenuously argued by appellant that the finding that she did not satisfy said judgment in accordance with her contract with Craig is against the evidence; and also that the court erred in excluding certain evidence offered by appellant on that point.

From certain rulings made at the trial, and from a certain question asked by the court of one of the witnesses, we are disposed to think that the court attached too much conclusiveness to record facts about the sale of the real property, to wit: that appellant bid at such sale a certain sum of money; that she received a certificate of purchase; that the sheriff got a receipt from Wickersham's attorney for the amount of money bid; and that the executions were returned wholly satisfied. These facts seem to have been treated, to some extent, as an estoppel against appellant. For instance, the court finds that " the moneys derived from said sale were applied by said sheriff in payment of the judgments," and that " the said moneys so realized by said sheriff from the sales of said property of said G. C. P. Sears was paid by said sheriff to I. G. Wickersham, the judgment creditor." But these findings must have been based largely upon the legal view that the return of the sheriff was conclusive; for the evidence shows, beyond question, that as a fact the sheriff never paid any

money arising out of the sale of the real property to
Wickersham, and never received any money on that
transaction, except his costs.   Lippitt, who was attor-
ney for Wickersham, and whose testimony is uncontra-
dicted, after explaining the transaction fully, testified
that " She bought it from the sheriff, and the note was
given for the balance of the judgments, and I received
of Mrs. Snyder the money *which satisfied the judg-
ments.*   The sheriff never had any money, but the sat-
isfaction of the judgment was *through* the sheriff."

If the real property to be sold was of little or no
value, and the contract between appellant and Craig
contemplated her right to bid at the sale, if she chose
so to do, with a faint hope of getting something out of
the property, it is clear that her purchase at such sale
was no breach of her contract with Craig; and it is
equally clear that going through the mere forms of hav-
ing the sheriff return that he received the money as the
price bid for the land, paid it over to the judgment
creditor, etc., did not estop appellant, as against Craig,
from showing the real facts.   And the evidence tends
strongly to the point that the contract *was* made in con-
templation of appellant's right to bid at the sale.   The
contract was made on Saturday, June 28, 1890, and the
sale of the real property was to take place on the 30th—
the next Monday.   Mr. Enos, who witnessed the mak-
ing of the contract, and whose testimony is uncontra-
dicted, testified as follows: "Mrs. Snyder said to Mr.
Craig, ' The sale of the real estate is to take place on Mon-
day, and I want to know whether I will pay my father's
share of the judgment of $2,010, or not.   I will pay my
father's share of that judgment if you will pay your
share.   I have got a ten thousand dollars and a little
over judgment against me that I am responsible for,
and I *will not bid the real estate off* unless you agree to
pay your half of the judgment.'   Mr. Craig told Mrs.
Snyder that if she would pay her father's share of that
judgment against him, that he would pay her $1,005,
his share of the $2,010;   that he expected George Max-

well to pay him on the first of August $2,000; then he would pay her the money. Mrs. Snyder said, 'Mr. Craig, I will pay the whole of the judgment if you will pay your half according to this arrangement.' He said he would." He further testified that Mrs. Snyder gave her note to Wickersham for the amount of the two judgments, and that he (the witness) afterwards paid and took up the note with her check. Lippitt also testified that he acted for Mrs. Snyder at the sale; that he was first instructed by her to bid the amount of the judgment upon which she was liable—something over $10,000; and was afterwards instructed by her to bid the amount of both judgments "as she had an agreement with Mr. Craig." This witness also testified that the purchase turned out to be worthless. We are not able to see where this testimony was materially weakened; although the cross-examination developed a little confusion, and the evidence was perhaps not quite as full as it might have been. We will not, therefore, determine whether or not the finding was against the evidence that was actually introduced; because we think that the court erred to the prejudice of appellant in excluding certain evidence which she offered.

Appellant offered to prove that the land bid in by her at said sheriff's sale was mortgaged to the extent of $6,000, and that there had been a homestead declaration upon it made by G. C. P. Sears before the levy of the executions. The court sustained a general objection to this evidence, and appellant excepted. We think that this ruling was erroneous and material. The appellant clearly had the right to show the condition and value of the land, as a circumstance in the light of which her said contract with Craig was made, and as tending to show that the contract was as she claimed it to be. It is not to be supposed that Craig would have made such a contract, if the land which he knew would be sold in a day or two under the executions could probably be sold to a *bona fide* bidder for the amount of both judgments. But if the land was so encumbered as

to be of no value, or of but a slight speculative value, he might well get rid of a judgment for the whole of which he was liable, by agreeing to pay one-half of it, regardless of the fact that appellant might, if she chose, bid off the land at the sheriff's sale and take the chance of making something out of it in the future. The condition and value of the property bid off by appellant, the circumstances under which the bid was made, and the agreement with Craig entered into, and whatever tended to show whether or not the purchase of the land by appellant was a breach of said contract, should be admitted in evidence. We think that the court properly admitted in evidence the executions and the returns of the sheriff thereon; but they were not conclusive against appellant in this action. She had the right to show the real facts as to the satisfaction of the judgment; although the returns of the sheriff showed the form by which such satisfaction was expressed.

Judgment and order reversed, and a new trial ordered.

DE HAVEN, J., and FITZGERALD, J., concurred.

Hearing in Bank denied.